## O'ROURKE *v.* PECK and others.[1]

*(District Court, S. D. New York.* November 29, 1886.)

1. WHARVES—INJURY TO VESSEL—LIABILITY OF LESSEE OF WHARF.

Defendants occupied the wharf at the foot of One Hundred and Twenty-eighth street, Harlem river, under a lease which reserved to grantor wharfage rights. These rights defendants' grantor subsequently conveyed to the Consumers' Coal Company, on whose invitation libelant brought his boat to the wharf. The boat being injured while at the wharf, *held,* that there was sufficient privity between libelant and defendants to entitle the former to relief directly against the latter.

2. SAME—LEASEHOLD PREMISES—COVENANT TO REPAIR—LIABILITY—NOTICE OF DANGER.

Defendants, in their lease, covenanted to "make such alterations and repairs to the dock and bulk-head as *they* required." Libelant's boat, the day after her arrival at the wharf, was sunk, owing to the dangerous character of the river bottom, of which libelant was not notified. *Held,* that the covenant meant such repairs as the *dock and bulk-head* required, and that the defendants were liable for the loss, for neither making the necessary repairs, nor giving notice of danger to the libelant's boat.

In Admiralty.

*E. D. McCarthy,* for libelant.

*George S. Hamlin,* for defendants.

BROWN, J. The libelant's coal-boat was sunk during the night of June 19, 1884, while at the end of the bulk-head at One Hundred and Twenty-eighth street, Harlem river. The evidence leaves no doubt that she rolled over and outwards, as the tide went down, in consequence of settling upon the bottom along the end of the bulk-head, where the bottom was uneven and dangerous for boats to lie during the ebb-tide, unless fended off. The boat was sent there to the Consumers' Coal Company, had arrived the afternoon before, and had no notice of the dangerous character of the bottom. The defendants had occupied the wharf and premises for upwards of two years, under a lease dated February 28, 1882, which reserved to the grantors rights of wharfage, and to use the bulk-head for the purpose of loading and unloading coal and other boats, and to carry coal on the elevated rail or tram way situated on the property. The grantor, a few days afterwards, granted the rights reserved to the Consumers' Coal Company. The defendants in their lease covenanted, among other things, "to make such alterations and repairs to the dock and bulk-head as they required."

The wharf was not devoted to the uses of the public. It was used only for the business of the defendants and of the Consumers' Coal Company. Though strangers tying up at the dock without notice could probably not be treated as trespassers, (*Heeney* v. *Heeney,* 2 Denio, 625,) still I can hardly deem the defendants liable as occu-

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

pants merely; since neither the public, nor the libelant, came to the dock upon any implied invitation by the defendants. They are liable, I think, upon the terms of the lease only, if liable at all. *Onderdonk* v. *Smith*, 27 Fed. Rep. 874. The regulations of the dock department were neither pleaded, nor put in evidence.

My conclusions are as follows:

1. There is no such ambiguity in the terms of the lease as permits the natural import of its language, as to the obligation to repair, to be contradicted by parol evidence. The plain meaning of the clause, as regards repairs, is that the defendants would make "such alterations and repairs to the dock and bulk-head" as they, the dock and bulk-head, "required."

2. The above covenant, in connection with the reservation to the grantor of the rights of wharfage and of use for the coal business, clearly imports an agreement by the defendants to repair for the use and benefit of the grantor, as well as for their own use; and hence for the use of the grantor's privies, under the further lease by the grantor of the premises and rights reserved, and of those also who should make use of the wharf in the coal business, as expressly reserved and provided for in the defendants' lease. There is sufficient privity, therefore, with the libelant, who came there upon the invitation of the Consumers' Coal Company, in the ordinary course of this coal business, to entitle the libelant to relief directly against the defendants.

3. The unsafe character of the ridge on the bottom along the bulk-head, whether arising from gradual accumulations, or dejections from the dock, must, upon the evidence, be deemed sufficiently known to the defendants to require the dock, and the adjacent bottom, to be put in a safe condition. It was plainly a condition requiring "alteration or repair," and hence within the terms of the defendants' covenant. So long as the defendants neglected to "alter or repair" the bottom, so as to make it safe, they were bound to give notice of its condition to strangers having a right to come there in the business of the Consumers' Coal Company. I find, therefore, though not without hesitation, that the libelant is entitled to a decree. A reference may be taken to compute the damages, if not agreed upon.